IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CATHERINE SCHULZ**,                                         Civil Case No. 09-822-KI

　　　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER

　vs.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

　　　　　　Defendant.


　　　Alan R. Unkeles
　　　1869 NW 169th Place, No. 121
　　　Beaverton, Oregon  97006

　　　　　Attorney for Plaintiff

　　　Dwight Holton
　　　United States Attorney
　　　District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204

David Morado
Regional Chief Counsel
Willy M. Le
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Catherine Ann Schulz brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability. The claimant has the

burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert.

denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner

determines whether the claimant is engaged in "substantial gainful activity." If the claimant is

engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds

to step two and determines whether the claimant has a medically severe impairment or

combination of impairments. A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and

416.920(c). If the claimant does not have a severe impairment or combination of impairments,

disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R.

§§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled. If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

Although Schulz had earnings in excess of the level considered to be substantial gainful activity in 2004, 2006, and 2007, the ALJ found that she had not engaged in substantial gainful activity since her amended onset date of July 12, 2004 because Schulz's employer allowed her

extra break times to cope with her pain.  The ALJ found that Schulz had a single severe

impairment of fibromyalgia.  The ALJ also found that her severe and nonsevere impairments,

either singly or in combination, were not severe enough to meet or medically equal the

requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Based

on the record, the ALJ found that Shulz could perform light work with several limitations:

sitting limited to one hour at a time for a total of four hours in an eight-hour day; standing or

walking limited to one hour at a time for a total of four hours in an eight-hour day; frequent

lifting and carrying limited to ten pounds; pushing and pulling limited to ten pounds; climbing,

balancing, stooping, kneeling, crouching, and crawling occasionally; and simple routine work.

Based on the vocational expert's opinion that someone with Shulz's limitations could work as a

cashier or order clerk, the ALJ found that Schulz was not disabled under the Act.

## FACTS

Schulz, who was 39 years old at the time of the decision, alleges that she became disabled

on July 12, 2004 due to numerous problems, including leg pain and swelling, sleeping problems,

fibromyalgia, headaches, feeling flu-like, panic attacks, depression, concentration and confusion

problems, arthritis, and extreme fatigue.  She has one year of college and has worked as a

caregiver, insurance agent, administrative assistant, and barista.

Schulz lives alone and does her own shopping, cleaning, and cooking, but at a much

lower level than prior to her illness.  She claims to no longer engage in hobbies of reading,

traveling, biking, hiking, dancing, and yard work due to pain and confusion.

Schulz has approximately five hospital admissions of two or three days each since 2004 for abdominal pain or asthma issues. She also has numerous visits to emergency rooms for complaints about migraines, breathing difficulty, abdominal pain, chest pain, and dental pain.

At the hearing, Schulz testified that she had significant problems with confusion which made it impossible for her to perform office jobs at which she previously excelled. Schulz switched to caregiving for several years but had to stop working those jobs due to the pain throughout her body. Four hours of work as a caregiver wore her out for the rest of the day. As late as September 2007, three years after her alleged onset date, Schulz worked as many as 35 hours a week as a caregiver but the ALJ determined the work was not substantial gainful activity. Schulz missed 150 days of work in 2007 due to illness.

## DISCUSSION

I.   <u>Schulz's Credibility</u>

Schulz argues that the ALJ's statement identifying the parts of her testimony lacking credibility is too vague to satisfy case law requirements.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. <u>Id.</u> The ALJ "must specifically

Page 6 - OPINION AND ORDER

identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ discounted Schulz's testimony on the intensity, persistence, and limiting effects of her physical and cognitive symptoms and then summarized Schulz's testimony about her concentration problems and anxiety causing particular difficulties with both office and caregiving jobs and her need to lie down at work to recover from pain. The ALJ continued by noting numerous inconsistencies between Schulz's reported limitations and her activities, including driving, working significant hours as a caregiver well after her alleged onset date, and use of narcotic pain medication which some medical providers characterized as drug-seeking behavior. The ALJ gave sufficient detail to satisfy the burden.

Schulz also disagrees with the ALJ's statement that the medical evidence shows physical findings that are essentially normal. In particular, Schulz points to multiple clinic and hospital visits to treat infection, numerous professional observers noting her to be ill, and Schulz's chronic high blood pressure.

The Commissioner contends that Schulz's argument rests on her alternative interpretation of the record, which does not outweigh the ALJ's interpretation. The Commissioner contends that Schulz's reports of temporary illness, discomfort, fatigue, and swelling, as well as the

Page 7 - OPINION AND ORDER

diagnoses of chronic fatigue and hypertension, do not establish quantifiable limitations on her ability to work.

Although Schulz has made extensive use of medical clinics and hospital emergency rooms in dealing with pain in various parts of her body as well as breathing problems, the ALJ's interpretation that physical findings are essentially normal is supported by substantial evidence. For instance, doctors ran numerous tests to try to determine the source of Schulz's abdominal pain but were unable to pinpoint it.  A diagnosis of an impairment does not entitle a person to a finding of disability.  The deciding factor is the severity of the limitations resulting from the impairment.  See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990) (discussing presumptive disability at step three and a diagnosis of chronic venous insufficiency).  Additionally, although some of Schulz's blood pressure measurements were slightly elevated, no physician treated her for high blood pressure and no one put any limitations on her activities due to high blood pressure.  This was in spite of the fact that Schulz received frequent medical care.

Moreover, the ALJ did not err by considering the objective medical evidence.  Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Schulz also contends that the use of emergency services and narcotic pain medication abuse, assuming she is an abuser, are not logical reasons to discredit her testimony.

The Commissioner argues that efforts to obtain narcotic pain medication through emergency room services and untruthfulness about substance abuse both can support a finding of a lack of credibility.

The ALJ noted that Schulz routinely sought additional treatment from emergency services and that the treatment records raised the issue of medication abuse.  The records note instances when Schulz was refused additional narcotics and note that she was "fired" from the pain clinic because she had obtained narcotics from a dentist, in violation of the pain medication contract with the pain clinic.  The ALJ was concerned about Schulz's conflicting stories of lost prescriptions, failure to mention some prescriptions, and failure to mention her pain medication contract.  Inconsistencies concerning the use of narcotic pain medication are a legitimate reason to discount a claimant's credibility.  Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (in discounting credibility, ALJ was concerned that an addicted claimant exaggerated physical complaints to obtain prescription pain medications).

In summary, the ALJ has given clear and convincing reasons for discounting Schulz's credibility.

II.    Lay Testimony

Schulz claims that the ALJ made several errors in evaluating the testimony of two lay witnesses:  Jodie Carr, Schulz's former supervisor, and Cynthia Force, Schulz's sister.

A.    Jodie Carr

Carr supervised Schulz when she worked as a caregiver at an assisted living facility.  Carr stated that Schulz took more break time than the other employees.  Carr allowed the behavior because she could see that Schulz needed more time to recover from pain than was available in the typical break schedule.  Business reasons also made it difficult for Carr to replace Schulz.  According to Carr, when Schulz was working, she got along well with residents and staff and no one ever complained about the quality of her work.

Page 9 - OPINION AND ORDER

Schulz contends that the ALJ erred in failing to resolve the conflict between finding Schulz not disabled and Carr's statement that Schulz needed more than the normal amount of break time to cope with pain.

The Commissioner argues that there is no inherent conflict because Carr described Schulz's inability to perform only one particular job, as opposed to the ALJ's consideration of all jobs in the national economy.

The ALJ accepted Carr's statement and used it to determine that Schulz did not perform work considered to be substantial gainful activity, even though she earned more than is allowed. I agree with the Commissioner that there is no discrepancy. The ALJ did not find that Schulz could return to her former job of caregiver but went on to consider other jobs based on vocational testimony. Thus, there is no conflict.

B.    Cynthia Force

Force stated that Schulz used to handle money responsibly but now often seems confused when Force goes over bills with her; spends little time on prior hobbies; seems too overwhelmed and ill to attend social activities; does not remember instructions; does not handle stress or changes in routine well; and is spacy, crabby, and very emotional. Force claimed that Schulz changed from "a capable, intelligent, active, responsible person to someone who has difficulty w/ basic every day tasks." Tr. 170.

Schulz claims that the ALJ failed to list the objective medical evidence that contradicts Force's statement. The Commissioner relies on the ALJ's recitation of numerous medical tests that ruled out various medical impairments and related limitations.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Commissioner of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Bayliss, 427 F.3d at 1218.

The ALJ accepted Force's testimony to the extent that Force was reporting behavior she observed or Schulz told her, limited to information not contradicted by the objective medical record. As discussed above, the ALJ properly discounted Schulz's testimony based, in part, on the objective medical record. The ALJ's reliance on the medical record is an acceptable reason to discount Force's statement of Schulz's limitations. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ may reject a lay witness' testimony if it conflicts with medical evidence).

III.   Testimony from Physician's Assistant

Schulz argues that the ALJ erred in rejecting the testimony of Laura Hanks, a physician's assistant who treated Schulz.

On June 15, 2006, Hanks stated that Schulz's pain would constantly interfere with attention and concentration; that depression, anxiety, and somatoform disorder affected her physical condition; that she could only sit or stand for ten minutes at one time; that she could sit for less than two hours in a work day and stand or walk for less than two hours in a work day; that she must walk for five minutes every 30 minutes; that she had to be able to shift positions at will and take unscheduled breaks; that she had to elevate her legs above the heart ten percent of the time during the work day; and that she would be absent from work about four days a month.

Page 11 - OPINION AND ORDER

Because Hanks is not a doctor, the Commissioner argues she is not classified as an acceptable medical source so the ALJ only had to evaluate her opinion under the rules for lay testimony. This is correct–under the regulations, a physician's assistant is a health care provider who is not an acceptable medical source. The Commissioner considers several factors when analyzing opinion evidence from this type of health care provider:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s); and Any other factors that tend to support or refute the opinion.

SSR 06-3p.

Schulz claims there is objective medical evidence providing a basis for Hanks' opinion that Schulz had experienced destruction of her sacroiliiac joints. The ALJ noted that the destruction of the sacroiliac joints is not found in the objective medical records. The Commissioner argues that no doctor ever diagnosed sacroiliitis and some doctors found no evidence of joint inflammation. The ALJ's reasoning is supported by a radiology note from June 8, 2006 which states that there was the possibility of sacroiliitis but no destructive process was seen. An arthritis clinic noted in August 2003 that there was no evidence of inflammatory arthritis and in September 2004 that there was no evidence of inflammatory sacroiliitis. On July 18, 2006, Hanks noted that Dr. Lee found another problem with Schulz's sacroiliiac joints but not sacroiliitis.

The ALJ has provided adequate reasons to discount Hanks' opinion of Schulz's limitations and the ALJ's reasoning is supported by substantial evidence in the rest of the objective medical record.

Schulz contends that the ALJ's decision lacks a logical link between Hanks' statement on medication side effects and whether Hanks' opinion on Schulz's absences is well-supported. The Commissioner contends that Schulz has not shown that she had any medication side effects at any time.

Neither Hanks' statement nor the ALJ's decision links the lack of side effects from the narcotics to Schulz's likely absences. I see no error here.

Schulz argues that the lack of diagnosis of a mental impairment is not a valid reason to discredit Hanks' assessment that mental issues affect Schulz's physical condition. The Commissioner contends subjective complaints are insufficient to establish an actual medical impairment.

Again, I agree with the Commissioner. A medically determinable impairment must be established through signs, symptoms, and medically acceptable clinical or laboratory findings but under no circumstances can be established through symptoms, namely the individual's own perception of the impact of the impairment, alone. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005). The ALJ discounted Hanks' opinion that psychological impairments were severely limiting Schulz because there was no competent diagnosis of any psychological disorder and Hanks' opinion of Schulz's mental impairments were based on Schulz's self reports. I also note that Schulz saw a psychologist a few times through the fibromyalgia clinic but received no diagnosis of a psychological disorder. The ALJ committed no error.

In summary, the ALJ used permissible reasons to discount Hanks' opinion on limitations Schulz would suffer in a work day.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____31st_____ day of March, 2010.

                            ___/s/ Garr M. King_____
                            Garr M. King
                            United States District Judge